Approved: _____
ELIZABETH A. ESPINOSA
Assistant United States Attorney

Before:  HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

**22 MAG 5747**

- - - - - - - - - - - - - - - X
                              :   SEALED COMPLAINT
UNITED STATES OF AMERICA      :
                              :   Violation of 21 U.S.C.
     - v. -                   :   § 846
                              :
MATTHEW FIEL, and             :   COUNTY OF OFFENSE:
LOTEN JIGME,                  :   NEW YORK
     a/k/a "Jimmy,"           :
                              :
          Defendants.         :
                              :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

SAMANTHA GILL, being duly sworn, deposes and says that she is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

1. From in or around December 2020 until at least in or around January 2022, in the Southern District of New York and elsewhere, MATTHEW FIEL, and LOTEN JIGME, a/k/a "Jimmy", the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MATTHEW FIEL, and LOTEN JIGME, a/k/a "Jimmy", the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance that MATTHEW FIEL, and LOTEN JIGME, a/k/a "Jimmy", the defendants, conspired to distribute and possess with intent to distribute was 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4.  I am a Detective with the NYPD.  I have been personally involved in the investigation of this matter.  This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals.  Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.  Based on my participation in this investigation, my review of consensually recorded conversations, and my conversations with other law enforcement agents, I have learned, among other things, the following:

    a.  On or about December 14, 2020, an undercover police officer ("UC-1") contacted a cellphone number subscribed to LOTEN JIGME, a/k/a "Jimmy", the defendant ("Cellphone-1"), and arranged to meet JIGME at a particular location in Manhattan, New York.  After JIGME met UC-1, JIGME asked UC-1 a series of questions to determine whether he knew UC-1 or if UC-1 was a police officer.  JIGME then sold UC-1 approximately one gram of a substance resembling methamphetamine in a small ziplock bag in exchange for approximately $80.  The substance subsequently tested positive for the presence of methamphetamine.

    b.  On or about March 24, 2021, UC-1 contacted JIGME on Cellphone-1 and told JIGME, in substance and in part, that UC-1 wanted to purchase five grams of methamphetamine.  JIGME directed UC-1 to meet him at 442 West 50th Street, Manhattan, New York ("Location-1"), which JIGME said, in substance and in

part, was the apartment of an individual who supplied crystal meth to JIGME's typical supplier.  At approximately 6:06 p.m. that same day, UC-1 met JIGME at Location-1.  UC-1 saw JIGME make a call from his cellphone and say in substance and in part "I'm downstairs."  JIGME then rang the doorbell for apartment 5E and UC-1 saw that the name "Fiel" was listed next to the mailbox for apartment 5.  The door to the building buzzed open and JIGME and UC-1 entered the building.  UC-1 gave JIGME approximately $300 in cash and JIGME took the money and went up the stairs while UC-1 waited in the lobby.  A short while later, JIGME returned and gave UC-1 a ziplock bag containing approximately five grams of a substance resembling methamphetamine.  The substance subsequently tested positive for the presence of methamphetamine.  A review of call records associated with Cellphone-1 and a cellphone subscribed to MATTHEW FIEL, the defendant ("Cellphone-2"), show that JIGME called FIEL three times in the approximately 30 minutes before the undercover buy.

   c.  On or about April 1, 2021, UC-1 communicated with JIGME by text message and calls to Cellphone-1 and arranged to buy five grams of methamphetamine.  JIGME told UC-1, in substance and in part, to meet him at Location-1.  UC-1 met JIGME at Location-1 at approximately 5:32 p.m.  After they arrived, JIGME contacted his supplier to tell the supplier that JIGME had arrived.  JIGME informed UC-1, in substance and in part, that the supplier was on his way but did not want anyone else inside the building.  UC-1 gave JIGME approximately $320 cash and saw JIGME then meet a tall male that I believe to be FIEL after FIEL opened the building door to let JIGME in.  A short while later, JIGME returned and gave UC-1 a ziplock bag containing five grams of a substance that resembled methamphetamine.  The substance subsequently tested positive for the presence of methamphetamine.  A review of call records for Cellphone-1 and Cellphone-2 showed that in the approximately 31 minutes prior to the undercover buy, JIGME called FIEL approximately five times and FIEL called JIGME approximately two times.

   d.  On or about August 5, 2021, UC-1 communicated with JIGME on Cellphone-1 and arranged to buy five grams of methamphetamine.  JIGME told UC-1 to meet him at Location-1.  UC-1 met JIGME at Location-1 at approximately 4:52 p.m.  After they arrived, UC-1 gave JIGME approximately $320 cash and JIGME buzzed the doorbell to apartment 5E.  JIGME then entered the building and returned a short while later.  JIGME used a scale to weigh a ziplock bag containing a substance resembling methamphetamine and confirmed that the substance weighed

approximately six grams. JIGME gave the ziplock bag to UC-1. The substance subsequently tested positive for the presence of methamphetamine. A review of call records for Cellphone-1 and Cellphone-2 showed that JIGME called FIEL approximately an hour and a half prior to the undercover buy.

   e.  UC-1 conducted additional buys of methamphetamine from JIGME on other occasions, including as recently as April 14, 2022. A law enforcement lab tested the substances purchased from JIGME and FIEL, which tested positive for the presence of methamphetamine. In total, JIGME and FIEL sold UC-1 at least approximately 61 grams of mixtures and substances containing methamphetamine.

   WHEREFORE, I respectfully request that warrants be issued for the arrests of MATTHEW FIEL, and LOTEN JIGME, a/k/a "Jimmy", the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

/s/ Samantha Gill, by the Court, with permission
_____
Detective Samantha Gill
New York City Police Department

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure,
This __12th__ day of July, 2022.

_____
JAMES L. COTT
United States Magistrate Judge